On May 12, 1938, the Mayor of Hammond issued to plaintiff a permit to erect a filling station on the right of way of the Illinois Central Railroad Company between Morris and Hanson Avenues which cross said railroad at right angles in the City of Hammond, the material to be used and the building to be erected to comply with all fire and zoning ordinances of said City. On October 19th following and before the erection of the building had begun, the Mayor wrote plaintiff a letter advising him that a great number of citizens had protested the granting of said permit to erect said filling station on the property of the railroad on the ground that said building would constitute a public hazard and that, in the exercise of its police power, the City was revoking said permit.
In April, 1939, plaintiff filed this suit setting up the above facts and alleged that the attempt to revoke said permit by the City of Hammond was unfair to him and discriminated against him; that the filling station he was preparing to erect on the property he had leased from the railroad would conform to the fire ordinances of the City, and the building would be more than 25 feet from Morris Avenue and would not create a traffic hazard; that there are two filling stations located across West Railroad Avenue from the place where he proposed to erect his station. He asked for an injunction to prevent the City from interfering with the erection of said filling station, and in the alternative, and in case the court should find that said building permit was revoked, that a writ of mandamus issue directing the City to issue him a permit.
An exception of no cause or right of action was filed by the City and sustained by *West Page 99 
the court, but through some agreement between counsel, the exact nature of which does not appear from the record, this ruling was either withdrawn or disregarded and the City filed an answer and the case was tried on the merits. In its answer, the City denied that any legal permit had ever been issued to plaintiff for erecting said filling station for the reason that no proper application had been made therefor with specifications showing the kind of building to be erected, and the Council had never acted on any permit as required by the ordinance of the City; but the City admitted that it had notified plaintiff that any purported permit issued to him had been revoked.
The City further alleged that it had passed a zoning ordinance zoning all territory within the City, except the right of way of the railroad on which the proposed filling station was to be erected, and this right of way was not included in the zoning ordinance for the reason that this land belonged to the United States Government and is restricted by Federal law to use as a railroad right of way and cannot be used for any other purposes; that the railroad has no right to lease any part of its right of way for a filling station. The City also alleged that the erection of said filling station would constitute a public hazard and endanger traffic crossing the railroad track on the adjacent streets, and that it was within the police power of the City to prevent this traffic hazard.
Judgment was rendered in favor of the City, and the plaintiff has appealed.
Act 237 of 1920 which amended and reenacted other acts on the same subject matter, authorizes all municipalities exceeding five hundred population to establish fire limits and regulate the construction of buildings, the thickness of walls and the material to be used in buildings constructed or repaired in said fire limits. Section 4 of said act authorizes such municipalities to require building permits and permits for repairs, which permits shall be granted according to uniform rules and shall never be refused when the application setting forth the character of the building to be constructed, or the nature of the repairs, conforms to the requirements of the ordinances passed in pursuance of the act.
The City of Hammond has an ordinance prohibiting the erection of any building within the corporate limits of the City without first having obtained a permit so to do from the Mayor and Board of Aldermen. Provision is made in the ordinance for obtaining such a permit by presenting written plans and specifications of the proposed building and setting forth the proposed location thereof. This application is then to be acted on by the Mayor and Board of Aldermen at a regular or special meeting.
It is obvious that the permit is required under the above mentioned act and ordinance as a protection against fire hazards and has no reference to traffic or other hazards affecting public safety. No claim is made by the City that the filling station which plaintiff proposes to erect does not conform to uniform regulations prescribed for granting a permit, or that said building would constitute a fire hazard. In fact, plaintiff testified, and it is not disputed, that the building which he proposes to erect will be composed of brick and stucco and will conform to all the ordinances of the City.
It is true that no formal application was made with plans and specifications, but it is shown that permits were granted in most cases without detailed plans and specifications. The Mayor and one of the commissioners were familiar with the kind of building plaintiff proposed to erect and where it was to be located. These two constituted a quorum of the Council, and considering the custom that prevailed, the Mayor was justified in issuing plaintiff a permit as he did to erect the proposed filling station.
The City of Hammond has also adopted a zoning ordinance under authority of Act 240 of 1926 whereby three districts are created in the City in which the use of buildings and property therein is restricted to one of three uses, residential, commercial and industrial. However, it is admitted that this zoning ordinance cannot affect the question involved in this suit as the land on which plaintiff proposes to erect said filling station is not included in any of the zones described in the ordinance. It is argued that the Commission Council of Hammond could effectively zone the area in which the filling station is proposed to be located, and force the plaintiff to remove the station therefrom after it has been erected. That may be true, but we must decide the case on the situation as it exists now and not what the situation might be in the future. *West Page 100 
The City has invoked its general police power to support its action in revoking the permit and in refusing plaintiff permission to construct this filling station. It is claimed that the station will create a greater hazard to traffic crossing the railroad tracks on Morris Avenue. The evidence shows that the station is to be located between the railroad track on the east, West Railroad Avenue on the west, Morris Avenue on the north and Hanson Avenue on the south. The station itself will be one story and only 16 feet wide, about 100 feet south of Morris Avenue, 21 feet from the railroad track, with an open canopy 24 feet between the station and West Railroad Avenue (a state highway) which the station faces on the west. It is claimed that several accidents have occurred at the crossing on Morris Avenue and that this station will increase the hazard at this crossing by obstructing the view of fast trains operating on the railroad. We fail to see how this small building located a hundred feet below this crossing and 21 feet from the railroad tracks could so obstruct the view at this crossing as to prevent a motorist or pedestrian from seeing a train approaching on the track. If the power of a municipality to regulate railroad crossings could be extended so as to prevent the erection of a building 100 feet from the crossing, the effect would be to deprive the owner in many cases of the right to use his property without any zoning ordinance making the regulations uniform.
With reference to the defense urged by the City that the railroad company has no right to lease part of its right of way for the operation of a filling station, we agree with the ruling of the trial judge that this is res inter alios acta; that it is no concern of the City as to whether or not the railroad had a right to grant plaintiff a lease on its right of way, as that is a matter which concerns the railroad, the Government and the plaintiff.
We understand that the exception of no cause or right of action is based on the ground that the right of way of the railroad through Hammond was granted by acts of Congress and the Legislature of this State; that the land belongs to the Government and the effect of granting the railroad only a right of way over this land was to confine its use to that of railroad purposes, and thus take this right of way out of the control of the City for zoning and other restrictive regulations. While there is a copy of the Act of Congress of August 2, 1852, in the record, granting a right of way to railroads over public lands, there is no evidence in the record to show whether or not the land on which the Illinois Central Railroad runs through Hammond is part of the public land covered by this act. In any event, we do not think the City has a right to raise this question in this case. If the right of way of the railroad and the operation of any business thereon is beyond the control of the City, then obviously it cannot interfere with plaintiff in the erection of a building and the operation of a business thereon. On the other hand, if the City does have the power to regulate and control the construction of buildings and the operation of businesses on said right of way, it has not passed any ordinances or made any uniform regulations affecting same. The exception was therefore without merit and should have been and is now overruled.
We think the plaintiff, under the facts shown by the record, is entitled to have the permit reinstated and given full force and effect. See State ex rel. Hundley et al. v. City of Alexandria,164 La. 624, 114 So. 491; State ex rel. Calvary Baptist Church v. City of Alexandria, 164 La. 628, 114 So. 492.
For the reasons assigned, it is ordered that the judgment appealed from be and the same is hereby avoided, annulled and reversed; and, it is now ordered that the permit issued to plaintiff by the Mayor of Hammond on May 12, 1938, to construct a filling station on the property therein described and in accordance with the fire ordinances of the City of Hammond be and the same is hereby re-instated and declared to be in full force and effect from the date thereof. It is further ordered that the City pay all cost of this suit. *West Page 101